# 97 DTA 150

**TRIBUNAL DE CIRUITO DE APELACIONES**
**CIRCUITO REGIONAL DE SAN JUAN**

BANCO CENTRAL HISPANO DE PUERTO RICO
Demandante-Apelado

v.

FRANCES Y. GONZALEZ ROMAN, CARLOS E. ROMAN RIVERA, Y LA SOCIEDAD LEGAL
DE GANANCIALES POR AMBOS CONSTITUIDA; JOSE M. RAGA MARI, T/C/C JOSE MARIA
RAGA, T/C/C JOSE M. RAGA Y LEVELS, INC.
Demandados-Apelantes

-----------------------------------------------------

BANCO CENTRAL HISPANO DE PUERTO RICO
Demandante-Apelado

v.

FRANCES Y. GONZALEZ ROMAN, CARLOS E. ROMAN RIVERA, Y LA SOCIEDAD LEGAL
DE GANANCIALES POR AMBOS CONSTITUIDA; JOSE M. RAGA MARI, T/C/C JOSE MARIA
RAGA, T/C/C JOSE M. RAGA Y LEVELS, INC.
Demandados-Apelantes

Núms. KLAN-95-01084/KLAN-95-01091

Panel integrado por su Presidente, Juez Rossy García
y los Jueces Aponte Jiménez y Negroni Cintrón

Aponte Jiménez, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Nos instan los demandados-apelantes a que revisemos la sentencia parcial dictada el 17 de mayo de 1995 por el Tribunal de Primera Instancia, Sala Superior de San Juan, mediante la cual declaró con lugar tres causas de acción de una demanda en cobro de dinero presentada por el demandante-apelado, Banco Central Hispano de Puerto Rico, contra los demandados-apelantes. El 26 de febrero de 1996, emitimos resolución. Consolidamos los recursos de referencia, presentados por los demandados-apelantes, por tratarse de apelaciones contra la sentencia antes mencionada que cubrían controversias similares entre las mismas partes. Por las razones expuestas a continuación confirmamos la sentencia recurrida.

El 5 de mayo de 1994, la parte demandante, Banco Central Hispano,(Banco Central), presentó demanda en cobro de dinero contra los co-demandados de referencia, Levels, Inc., Frances Y. González Román, Carlos E. Román Rivera y José María Raga Mari. Alegaron cinco (5) causas de acción. Las denominadas tercera y cuarta fueron transigidas por las partes. Quedaron vigentes la primera, segunda y la quinta.

A tenor de la primera causa de acción, el Banco Central alegó que otorgó el 25 de mayo de 1989 un contrato de arrendamiento financiero *("lease")* en relación con equipo y mobiliario por la suma de $450,000.00 con la co-demandada Levels, Inc. Que el cumplimiento de dicho contrato fue garantizado solidariamente por los co-demandados-apelantes, José María Raga Mari, Frances Y. González Román y Carlos E. Román Rivera. Reclamó que al momento de presentar la demanda el 5 de mayo de 1994, Levels, Inc. le debía $258,064.98 por concepto de cánones de arrendamiento; $50,950.27 por los intereses acumulados sobre dicha suma hasta la radicación de la demanda; $18,016.17 por concepto del valor residual del equipo arrendado, más los gastos que incurriera el Banco en la venta, reposesión y arrendamiento del equipo.

Según la segunda causa de acción, el Banco Central otorgó el 15 de marzo de 1991 un contrato de préstamo por $50,000.00 a la co-demandada Levels, Inc. Este préstamo se garantizó solidariamente por los co-demandados José María Raga Mari, Frances Y. González Román y Carlos E. Román Rivera, quienes otorgaron un documento de garantía a esos efectos. Alegadamente, al momento de presentarse la demanda, Levels, Inc. y los otros co-demandados adeudaban solidariamente la suma de $41,571.74 de principal, $1,910.88 de intereses acumulados al 29 de abril de 1994, más la suma de $4,157.17 por concepto de honorarios de abogado pactados en relación con dicho préstamo.

Conforme la quinta causa de acción, el co-demandado Raga Mari adeudaba al Banco Central la cantidad de $50,000.00 de principal, $2,183.34 de intereses acumulados al 29 de abril de 1994, más la suma de $5,000.00 por concepto de honorarios de abogado pactados. Esta deuda se derivó de un préstamo por $250,000.00 concedido por el Banco Central al co-demandado, José María Raga Mari.

Los demandados-apelantes contestaron la demanda. El co-demandado Raga Mari, conjuntamente con su contestación a la demanda, presentó reconvención. La misma aún no ha sido resuelta por el tribunal de instancia.

Así las cosas, el co-demandado Raga Mari presentó *"Moción Solicitando se Dicte sentencia Sumaria"* a su favor. El Banco Central contestó con una denominada *"Oposición a Solicitud de Sentencia Sumaria y Contra Solicitud de Sentencia Sumaria".* Acompañó dicho escrito con múltiples documentos en apoyo de sus alegaciones referente al otorgamiento de los contratos alegados al igual que al incumplimiento de los co-demandados. También presentó declaración jurada de uno de sus funcionarios que acreditaba las deudas y afirmaba que el co-demandado Raga Mari dejó de pagar el principal adeudado conforme los términos del contrato de préstamo, al igual que los intereses desde el 14 de septiembre de 1992.

Luego de diversas comparecencias de parte del co-demandado, Raga Mari y del Banco Central, el foro de instancia le denegó su solicitud de sentencia sumaria en cuanto a la quinta causa de acción alegada por el Banco.

El 17 de mayo de 1995, el tribunal declaró con lugar la primera, segunda y quinta causa de acción de la demanda vía sentencia sumaria. Determinó correctamente que no estaban en controversia los siguientes hechos: La co-demandada, Levels, Inc. era dueña de *"variados equipos y muebles"* que vendió al Banco Central con el propósito de otorgar un contrato de arrendamiento financiero por sesenta (60) meses; El 25 de mayo de 1989 se suscribió resolución corporativa acreditando que el co-demandado, José M. Raga Mari, en su carácter de Presidente de Levels, Inc. estaba autorizado a otorgar, en representación de la corporación, un contrato de arrendamiento financiero con el Banco Central, Corp.; Dicho contrato se otorgó ante notario el 25 de mayo de 1989 por Levels, Inc., representada por el co-demandado, Raga Mari y el Banco Central; Posteriormente se enmendó para cambiar los términos de pago; Los otorgantes acordaron que en caso de incumplimiento, el Banco Central podía declarar vencido el contrato y exigir el pago de los cánones pagados; A partir del 1 de abril de 1992, después de haber cumplido con los pagos por casi tres (3) años, Levels dejó de pagar. Los co-demandados, Carlos Román Rivera, su esposa Frances Y. González Román y el co-demandado José M. Raga Mari, habían previamente otorgado documento de garantía continua a favor del Banco Central comprometiéndose solidariamente a cumplir con las obligaciones presentes y futuras contraídas por el co-demandado Levels con el Banco. El 25 de mayo de 1989 dichos co-demandados suscribieron un documento sobre garantía de contrato de arrendamiento ilimitado a favor del Banco Central. Garantizaron solidariamente el cumplimiento de las obligaciones contraídas por Levels en el contrato de arrendamiento financiero. El 15 de marzo de 1991 el Banco Central concedió a Levels un préstamo por $50,000 con vencimiento el 21 de junio de 1991. Levels también dejó de pagar el préstamo después de cumplir parcialmente con la obligación de pagarlo. Dicho préstamo también fue garantizado solidariamente por los co-demandados, José María Raga, Carlos E. Román Rivera y Frances Y. González Román. Estos habían otorgado desde octubre de 1988 un contrato de garantía continua a favor del Banco Central el cual establece que habrían de cumplir solidariamente con las obligaciones presentes y futuras incurridas por Levels. El 14 de marzo de 1991, Banco Central concedió un préstamo al co-demandado, José María Raga Mari por la cantidad de $250,000. De esa cantidad dicho co-demandado adeudaba $50,000 de principal más intereses acumulados a la tasa pactada hasta el 29 de abril de 1994, los cuales debía pagar mensualmente conjuntamente con el principal.

Todos los co-demandados solicitaron reconsideración. El tribunal *a quo* las denegó. Inconformes, los esposos Frances Y. González Román y Carlos E. Román Rivera apelan ante este Foro. Su caso lo identificó nuestra Secretaría bajo el Núm. KLAN-95-01084. Imputan al tribunal de instancia en el recurso presentado la comisión de los siguientes errores:

*"Erró el Honorable Tribunal de Instancia al dictar sentencia sumaria parcial a favor de la parte demandante en cuanto a la primera causa de acción de la demanda, por que: existe controversia real y material en cuanto a si el financiamiento es un préstamo o un contrato de arrendamiento financiero.*

*Erró el Honorable Tribunal de Instancia al dictar sentencia sumaria parcial a favor de la parte demandante en cuanto a la segunda causa de acción de la demanda, por que: existe controversia real y material en cuanto a si los co-demandados Carlos E. Román Rivera y Frances Y. González Román eran o no deudores solidarios de la obligación."*

Los otros co-demandados, Levels, Inc. y el Sr. José María Raga Mari, mediante recurso separado identificado bajo el Núm. KLAN-95-01091, también nos solicitan la revisión de la sentencia emitida en su contra.

Ante nos, imputan al tribunal apelado haber cometido los siguientes errores:

*"Erró el Honorable Tribunal de Primera Instancia al dictar sentencia sumaria parcial a favor de la parte demandante en cuanto a la primera causa de acción de la demanda, por que: existe controversia real y material en cuanto a si el financiamiento es un préstamo o un contrato de arrendamiento financiero."*

*"Erró el Honorable Tribunal de Primera Instancia al dictar sentencia sumaria parcial a favor de la parte demandante en cuanto a la segunda causa de acción de la demanda, por que: existe controversia real y material en cuanto a si el co-demandado José María Raga Mari era o no deudor solidario de la obligación."*

*"Erró el Honorable Tribunal de Primera Instancia al dictar sentencia sumaria parcial a favor de la parte demandante en cuanto a la quinta causa de acción de la demanda, por que: existe controversia real y material en cuanto a si los co-demandados José María Raga Mari, tenía a la fecha de la radicación de la demanda el pago del préstamo adelantado."*

De acuerdo con los recursos presentados, los apelantes no impugnan ni atacan las determinaciones de hechos formuladas en la sentencia recurrida. Mediante el primer error apuntado sostienen que el contrato de arrendamiento financiero era en realidad un préstamo en el que se consolidaron deudas previas de Levels, Inc., razón por la cual el arrendamiento financiero era realmente un contrato simulado. Argumentan que existiendo controversia real en cuanto a si el contrato era uno de préstamo o arrendamiento financiero, incidió el foro apelado al dictar sentencia sumaria en su contra. No tienen razón.

De entrada resulta relevante destacar que no existe controversia en cuanto a que las partes otorgaron un contrato de arrendamiento financiero. Los autos no reflejan que exista controversia real en cuanto a si el financiamiento era un préstamo o un contrato de arrendamiento financiero excepto por las alegaciones infundadas que a esos fines promueven los demandados ante el foro apelado. Por el contrario, sí surge que las partes otorgaron un contrato de arrendamiento financiero sobre propiedad que el Banco compró a Levels, Inc. con la intención de otorgar un contrato de financiamiento perfectamente válido.

El *"leasing",* como es conocido, es una forma relativamente reciente de financiamiento. Se trata de un contrato atípico, *sui generis.* Se rige por el principio de autonomía contractual expresado en nuestro Código Civil. *Meyers Bros. Parking System of Puerto Rico, Inc. v. Gelco de Puerto Rico,* 114 D.P.R. 116,120 (1983). Su propósito es la cesión del uso de bienes adquiridos por el arrendador *"para dicha finalidad según las especificaciones del futuro usuario a cambio de una contraprestación consistente en el abono periódico de las cuotas."* Rodrigo Uria, *Derecho Mercantil,* decimoctava edición, Marcial Pons, Madrid, 1991, págs. 644-645. El arrendador en esa transacción interviene en un concepto *"exclusivamente financiero".* Rodrigo Uria, *ob. cit,* pág. 645.

De otra parte, el derecho normativo permite que *"[l]os contratantes en un negocio jurídico pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente,* siempre que no sean contrarios a las leyes, a la moral, ni al orden público." Artículo 1207 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3372. Nada hay en los autos que nos permita tan siquiera inferir que el pacto de arrendamiento financiero impugnado por los demandados fuese contrario a las leyes a la moral o al orden público. Por el contrario, tratándose de cantidades elevadas, el arrendamiento financiero permitió a Levels Inc. acudir a una venta al Banco con pacto arrendatario como mecanismo diseñado para cuando no se quiere arriesgar o no se dispone de capital suficiente. Véase, *Meyers Brothers Parking System, supra.* El error señalado, pues, no se cometió. La prueba documental en los autos revela que no existía controversia alguna en cuanto a que el financiamiento concedido a Levels, por las causas que fueran, se tramitó a través de un contrato de arrendamiento financiero.

Empero, aunque los demandados probaran que el contrato de arrendamiento financiero fue uno simulado como alegan, cobraría efecto el supuesto contrato disimulado que sería el de préstamo. En los contratos simulados las partes aparentan llevar a cabo un negocio jurídico cuando en realidad están llevando a cabo otro. *"[C]umplidos unos requisitos, el contrato simulado queda eliminado y cobra vigencia el verdadero y disimulado." Díaz García v. Aponte,* 125 D.P.R. 1 (1989). El Artículo 1228 del Código Civil de Puerto Rico,31 L.P.R.A. 3433, de otra parte establece que *"[l]a expresión de una causa falsa en los contratos dará lugar a la nulidad si no se probase que están fundados en otra verdadera y lícita".* Las partes libre y voluntariamente otorgaron un contrato el cual los co-demandados incumplieron y son responsables de la deuda reclamada. Los co-demandados no niegan que el dinero se prestó. Es decir, aun asumiendo que se tratase de un préstamo, los demandados-apelantes adeudaban la cantidad reclamada por el Banco Central en la demanda. En

cuanto al segundo error señalado, los co-demandados José María Raga Mari, Carlos E. Román Rivera y Frances Y. L. González Román, alegan que existe una genuina controversia sobre si son o no deudores solidarios por el préstamo de $50,000.00. No niegan, sin embargo, haber otorgado contratos de garantía continua y garantía ilimitada de contrato de arrendamiento a favor del Banco Central. Cuestionan la validez del contrato de garantía continua otorgado por ellos en el 1988 que así lo establece, en base a que en un documento interno del Banco que lleva fecha de *"12-04-90"* intitulado *"Resolución de Préstamo"*, en la casilla de dicho documento que alude a la *"Descripción de Colateral y/o Deudores Solidarios se expresa "ninguna". Argumentan los co-demandados, apoyados en tal documento, que ello así denota que la "intención de las partes fue que dicho préstamo se otorgaba sin garantía alguna."* Admiten, no obstante, que *"exist[ía] [la] garantía continua firmada por los apelantes."* Tampoco tienen razón.

Ciertamente, los co-demandados-apelantes, Raga Mari, Román Rivera y González Román otorgaron un documento de garantía continua el 6 de octubre de 1988 a favor del Banco Central, Corp. Así expresamente lo admiten. En esa garantía se comprometieron a responder solidariamente por las deudas que Levels, Inc. tuviera en la actualidad o en el futuro con el Banco. En el inciso 8 de dicho contrato se expresa lo siguiente: *"Ningún acto o ninguna omisión de clase alguna por parte del Banco afectará en forma alguna esta garantía..."*

El hecho de que el Banco haya omitido los nombres de los garantizadores en un documento interno en relación con el préstamo de $50,000, como alegan los apelantes, no significa que no estén obligados a pagar de acuerdo con la obligación que suscribieron a favor del Banco sobre ese particular. El haberse omitido el nombre de los co-demandados en el documento a que aluden, no significa que éstos puedan desvincularse de su obligación de responder como deudores solidarios tal y como se comprometieron. Su efecto no trasciende como para atribuirle a la transacción el elemento de *"intención"* que se le pretende adjudicar al documento en cuestión.

Tampoco se derrota la obligación, como alegan los co-demandados, por el hecho de que en el pagaré suscrito por el co-demandado Raga Mari en representación de Levels, Inc., no se haya hecho mención de garantía alguna. El documento sobre garantía en que se basa el Banco para exigir responsabilidad solidaria, cubre y consolida ese aspecto de o la obligación de manera amplia y específica. De otro lado, alegan los co-demandados-apelantes que no responden por esta deuda ya que el préstamo no fue autorizado por la Junta de Directores de Levels, Inc. No cuestionan, sin embargo, que el dinero haya sido desembolsado a Levels, Inc., ni que haya sido utilizado para beneficio de esta corporación. Ciertamente, aun cuando el contrato no fuera autorizado por la Junta de Directores, que en este caso sí lo fue, las actuaciones posteriores de Levels reflejan que no sólo aceptó sino que ratificó el préstamo. Levels, Inc. efectuó pagos al préstamo antes de dejar de pagarlo. Dicha actuación impide que ahora niegue su validez por esa razón. Cf., *Berrizbetía v. Times Publishing Co.,* 42 D.P.R. 799 (1931). El profesor Luis Mariano Negrón Portillo en su libro *Derecho Corporativo Puertorriqueño* expresa:

*"La doctrina de la ratificación se utiliza para obligar a la corporación a asumir la consecuencia de los actos de un oficial suyo, llevados a cabo sin autoridad expresa ni implícita. Bajo esta doctrina, se entiende que se puede obligar a la corporación si ésta, luego de enterarse de la transacción, expresamente adoptó, reafirmó o aceptó la misma o no la desaprobó, revocó o rescindió. Cuando esta doctrina se utiliza, normalmente la corporación ha derivado beneficios de los actos de su oficial."*

Luis Mariano Negrón Portillo, *Derecho Corporativo Puertorriqueño,* 1995, pág. 161.

En cuanto a la quinta causa de acción dirigida contra el co-demandado Raga Mari exigiéndole el pago por un préstamo personal concedido a él por la cantidad de $250,000, sostiene éste que erró el tribunal de instancia al determinar que la deuda estaba vencida y que era líquida y exigible. Aduce que estaba adelantado en sus pagos. Fundamenta su alegación en un boleto preimpreso por el propio Banco en el que se le insertó que el próximo pago de principal vencía en *"09/14/94"* cuando la demanda se presentó en 5 de mayo de 1994. Sostiene que no procedía se dictara sentencia sumaria en su contra, ya que existía una controversia de hechos sobre si el préstamo de $250,000 estaba o no al día en el pago de principal.

Del contrato de préstamo firmado entre las partes surge que el principal de la deuda se pagaría en cincuenta plazos mensuales consecutivos de $5,000.00, más los intereses correspondientes, hecho éste admitido por el co-demandado Raga Mari. En la demanda se alega que el co-demandado dejo de hacer sus pagos mensuales correspondientes al principal desde el 11 de octubre de 1991.

En cuanto a los intereses, Raga Mari dejó de pagarlos el 14 de septiembre de 1992 habiéndose acumulado al 29 de abril de 1994, por ese concepto, la cantidad de $2,183.34. Así lo afirmó el Banco Central mediante la declaración jurada de un oficial de dicha institución que acompañó con la solicitud de sentencia sumaria, hecho éste que no fue negado.

Según el co-demandado Raga Mari, al momento de presentarse la demanda en su contra, el pago del principal de la deuda se había realizado por adelantado desde el 10 de septiembre de 1991 mediante la entrega que le hizo al Banco de $180,000 de los $250,000 tomados a préstamo. Argumentó ante el foro de instancia que ello se desprendía del boleto preimpreso preparado por el mismo Banco. Sin embargo, al oponerse a la sentencia sumaria solicitada por el Banco Central, no refutó lo alegado en la misma relacionado con los intereses acumulados dejados de pagar desde septiembre de 1992.

A tenor de lo anterior, somos de criterio que si bien el co-demandado Raga Mari pudo haber establecido que existía una controversia real y sustancial para derrotar la solicitud de sentencia sumaria presentada por el Banco en cuanto a si el principal del préstamo se había o no pagado por adelantado y, por consiguiente, que esa parte del contrato no se había incumplido, no obstante, al no negar lo referente a la falta de pago de los intereses dejó de controvertir ese segmento de las alegaciones del Banco sustentadas por declaración jurada. A tales efectos, para los fines de la demanda presentada, resultaba igual si se trataba de un incumplimiento en cuanto al pago del principal o del pago de los intereses. Ambos eventos se alegaron por el Banco como incumplimiento al contrato de préstamo.

La falta de cumplimiento en relación con el pago por cualquiera de los dos conceptos daba al Banco Central la facultad para declarar vencido el préstamo y proceder a reclamar el balance adeudado por la vía judicial sin necesidad de requerimiento o notificación. Así, claramente, surge del texto del pagaré suscrito por el referido co-demandado. Es decir, ya fuese por razón del incumplimiento por falta de pago del principal o de los intereses del préstamo, el Banco Central tenía la opción, bajo cualesquiera de las dos razones, de declarar la deuda vencida y proceder a su cobro por la vía judicial, como lo hizo.

La sentencia sumaria dictada alude a que el co-demandado incumplió con el pago del principal. Pero también se funda en que los intereses igualmente se habían dejado de pagar.

Bajo esas circunstancias, nos obliga a concluir que el tercer error señalado por el co-demandado Raga Mari, en relación con la quinta causa de acción, no fue cometido. Al dejar de pagarse los intereses pactados, el Banco tenía la opción, como efectivamente la ejerció, para declarar vencida la deuda y exigir su cumplimiento sin necesidad de requerir o notificar al deudor, lo mismo que si el principal se dejaba de pagar.

La sentencia sumaria se debe conceder cuando quede establecido con claridad la existencia de un derecho. Utilizada correctamente provee un mecanismo rápido y eficaz en aquellos casos que no existe controversia sobre hechos materiales del litigio. *PFZ Properties, Inc. v. General Accident Insurance Company*, **94 J.T.S. 116**, y casos allí citados. Para derrotarla, la parte promovida tiene la obligación de demostrar que existe una controversia real de hechos que requiere se adjudiquen en un juicio en su fondo. *Méndez Arocho v. El Vocero de Puerto Rico*, **92 J.T.S. 94.** Deberá, a esos fines, presentar declaraciones juradas y documentos que pongan en controversia los hechos alegados por la parte promovente. Aun cuando exista controversia sobre unos hechos, si éstos no son materiales, ello no impide que se dicte la sentencia sumaria solicitada. *Caquías Mendoza v. Asociación de Residentes de Mansiones de Río Piedras*, **93 J.T.S. 127.** El tribunal, al considerar una solicitud de sentencia sumaria, debe presumir como ciertos aquellos hechos no controvertidos. *PFZ, supra.*

Los co-demandados en el caso de marras, en cuanto a la primera causa de acción alegada por el

Banco, se limitaron ante el tribunal de instancia a atacar la solicitud de sentencia sumaria en base al derecho aplicable. Insistieron, en parte, que el negocio jurídico acordado fue el de un préstamo y no de un arrendamiento financiero. Igual deducción sostienen ante este Foro. Argumentan, asimismo, que la Junta de Directores de la co-demandada Levels, Inc. no había autorizado el otorgamiento del contrato de arrendamiento financiero y que la intención del Banco Central no fue exigirle a los co-demandados Raga Mari, Román Rivera y González Román que figurasen como deudores solidarios de las obligaciones incurridas por la referida corporación. Como ha quedado demostrado, los demandados no descargaron su responsabilidad de derrotar la moción de sentencia sumaria. El derecho aplicable no sostiene su posición ante unos hechos incontrovertidos como los que surgen de los autos.

En lo concerniente a la segunda y quinta causa de acción, los hechos cardinales no controvertidos permitían que se dictase sentencia sumaria en contra del co-demandado Raga Mari como ya hemos visto. Los documentos de garantía continua y de garantía ilimitada del contrato de arrendamiento suscrito por los referidos co-demandados, unido al hecho incontrovertido de la falta de pago del principal en un caso, y de los intereses en el otro, sostienen el dictamen apelado.

Sólo nos resta atender el señalamiento que nos hacen los apelantes en relación con el documento de garantía suscrito por los co-demandados, González Román y Román Rivera el 6 de octubre de 1988 autenticado ante el abogado-notario, J.E. Rivera Delgado. Conforme la copia que se nos suple, el notario Rivera Delgado se limitó a insertar la siguiente anotación en el documento de garantía que notarizó: En Río Piedras, hoy día 6 oct/1988." Surge del referido documento, el número de testimonio correspondiente al 7249. Nada más.

Semejante actuación del notario Rivera Delgado resulta en una crasa inobservancia de la Ley Notarial. No sólo omite el nombre de las personas que suscriben el testimonio de autenticidad y sus circunstancias personales, sino que no da constancia de si firman ante él y si los conoce o no. Aun cuando ello no afecta la validez de la obligación tal cual si fuese un documento privado por cuanto los suscribientes, Frances Y. González Román y Carlos E. Román Rivera, ambos co-demandados-apelantes, no niegan que lo firmaron, lo anterior amerita que se notifique a nuestro Tribunal Supremo con copia de esta sentencia para los fines que estime dicha Curia pertinente en relación con la actuación descuidada y reprobable del notario Rivera Delgado.

Por las razones antes expuestas se confirma la sentencia parcial apelada. Se ordena que copia de esta sentencia se notifique al Tribunal Supremo de Puerto Rico.

Lo acuerda el tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General